IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 29, 2002

## JESSE CARTER v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 8784    Charles Lee, Judge**

_____

**No. M2001-02496-CCA-R3-PC - Filed November 20, 2002**

_____

The petitioner appeals the denial of his post-conviction relief petition.  He argues: (1) his trial counsel was ineffective in advising him regarding the sentence agreement in which he waived his right to appeal; and (2) he did not knowingly and voluntarily waive his right to appeal.  We conclude that although the post-conviction court erroneously stated that the uncorroborated testimony of the post-conviction petitioner "should be summarily struck," the post-conviction court, nevertheless, made proper and adequate findings which support the denial of relief.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Hershell D. Koger, Pulaski, Tennessee, for the appellant, Jesse Carter.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; W. Michael McCown, District Attorney General; and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Bedford County jury convicted the petitioner of possession with intent to deliver over 0.5 grams of cocaine and resisting arrest.  He also pled guilty to simple possession of marijuana.  On the day of the petitioner's sentencing hearing, petitioner's attorneys discovered the state intended to present proof that the petitioner had been involved in two drug sales in Nashville while on bond.

The proof at the evidentiary hearing showed trial counsel and the petitioner were allowed to review the evidence and interview the state's witnesses regarding these sales.  The state and the petitioner then entered into an agreement whereby the petitioner would be sentenced to ten years'

incarceration, would forfeit his automobile, and would waive his right to appeal his conviction; in return, the district attorney's office would encourage Metro Nashville not to pursue charges on the two alleged drug sales. The trial court questioned the petitioner regarding the agreement and his waiver of the right to appeal; it then accepted the agreement. The petitioner also signed the order which waived his right to appeal.

In his post-conviction relief petition, the petitioner alleged trial counsel was ineffective in advising him regarding the consequences of accepting the agreement, and the waiver of appeal was not made knowingly and voluntarily. The post-conviction court found that trial counsel rendered effective assistance, and that the petitioner voluntarily waived his right to appeal; accordingly, it dismissed the post-conviction relief petition.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. *See* Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Our supreme court has applied the Strickland standard to the right to counsel under Article I, Section 9 of the Tennessee Constitution. *See* State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; s*ee* Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

We will review the petitioner's claims in the same manner in which we would review a claim that counsel was ineffective in advising his client regarding a guilty plea. As to guilty pleas, the post-conviction relief petitioner must establish that, but for counsel's errors, petitioner would not have entered the plea and would have insisted on going to trial. *See* Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). Thus, as pertinent to this case, petitioner must establish that he would not have waived his right to appeal but for counsel's deficient performance.

The petitioner bears the burden of proving the factual allegations that would entitle petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a *de novo* standard with a presumption that those findings are correct, unless the preponderance of the evidence establishes otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). However, the post-conviction court's conclusions of law, such as whether counsel's performance was deficient or

whether that deficiency was prejudicial, are reviewed under a *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001).

## II. POST-CONVICTION HEARING

In the instant case, the petitioner testified at the evidentiary hearing that trial counsel told him he could not appeal the trial court's denial of his motion to suppress. The petitioner further stated trial counsel told him they could not appeal his convictions because his trial was "clean." He said trial counsel did not tell him he could have appealed his sentence if he had allowed the trial court to sentence him instead of entering into the agreement.

The petitioner testified he went to the sentencing hearing believing he would be placed on some form of alternative sentencing. He stated one of his attorneys told him it was "a good possibility" he could receive probation or community corrections. The petitioner said he did not recall trial counsel telling him he faced a potential sentence of twelve years for possession of cocaine over 0.5 grams with the intent to deliver, a Class B felony. *See* Tenn. Code Ann. §§ 39-17-417(c)(1), 40-35-112(a)(2).

According to the petitioner, on the day of his sentencing hearing, he went with his two defense attorneys and some police officers to listen to the audio tapes of the alleged drug sales. The petitioner said he left to make a telephone call before listening to all of the tapes. He testified he did not discuss the state's evidence with his attorneys; he stated they did not tell him the effect the evidence could have on his sentencing, or that the evidence could lead to additional charges against him. He testified one of his attorneys told him, "There is nothing worse you could have done." He said his defense counsel did not explain the sentencing agreement to him and did not advise him that he would be waiving his right to an appeal. He further testified he would have sought an appeal if the trial court had sentenced him to "hard time" in the penitentiary.

The petitioner's lead trial counsel testified for the state at the evidentiary hearing and contradicted petitioner's testimony in all material matters. The attorney stated that during the time he represented the petitioner, they spoke every week. He said he advised the petitioner of his rights more than once and explained the "entire process of the criminal justice system." He further testified he gave the petitioner a prognosis of all the possible outcomes of his case and explained the range of potential punishments. The attorney said he advised the petitioner of his right to appeal.

According to the attorney, following the petitioner's convictions, he and co-counsel were prepared to seek community corrections as a sentencing alternative; however, they were concerned that the petitioner would be incarcerated, and they conveyed these concerns to the petitioner. He stated they advised the petitioner that he could possibly be required to serve the maximum sentence in the penitentiary.

Trial counsel said that, on the day of the sentencing hearing, they learned the state intended to present evidence showing the petitioner had engaged in drug sales while on bond. He testified he and the petitioner listened to the audio tapes of the transactions, and the petitioner's voice could be heard on the tapes. He also stated he and the petitioner had a lengthy discussion with two Metro police officers who were involved in the alleged drug sales. He opined the state's proof that the defendant had engaged in the alleged drug sales was strong. He said he told the petitioner, "You screwed up badly. You could not do it any worse."

The attorney testified that as a result of the new evidence, he and the state entered into settlement negotiations regarding the petitioner's sentence. The state offered a sentence of ten years on the conviction for possession of cocaine with intent to deliver, and the remaining convictions, both misdemeanors, would be served concurrently. As part of the agreement, the petitioner would waive his right to appeal and surrender his vehicle for forfeiture; in turn, the district attorney's office would request Metro Nashville not to indict the petitioner for the two alleged drug transactions.

Trial counsel stated he explained the sentencing offer to the petitioner, including the requirement that he must waive his right to appeal. He said he also explained to the petitioner he was facing consecutive sentences if convicted of the offenses which allegedly occurred while the petitioner was on bond. He testified he further explained that the trial court might impose the maximum sentence of twelve years if presented with the evidence the petitioner had engaged in drug transactions while on bond. The attorney opined the state's offer of ten years was "reasonable" and in the petitioner's best interest under the circumstances. He stated he advised the petitioner that he must make his own decision whether to accept the offer.

The parties presented the settlement agreement to the trial court. The trial court explained to the defendant that under the terms of the agreement, he would receive a ten-year sentence to be served in incarceration and would be waiving his right to appeal his convictions. The defendant indicated he understood and would accept the agreement. Following the hearing, the petitioner signed the order waiving his right to an appeal.

### III. ANALYSIS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Following the evidentiary hearing on the post-conviction relief petition, the post-conviction court stated it accredited the testimony of trial counsel, and the events on the date of sentencing gave "great credibility" to counsel's testimony. The lower court found trial counsel fully advised the petitioner regarding the range of possible sentences; it implicitly found counsel fully advised the petitioner regarding the settlement agreement. The post-conviction court found trial counsel's representation was well within the range of competence demanded by Strickland and Baxter. The evidence does not preponderate against the findings of the post-conviction court. Likewise, we conclude trial counsel's performance was in no way deficient.

-4-

Ordinarily, this would end our inquiry as to this issue. However, we note the following statement by the post-conviction court at the conclusion of its findings:

> [T]he Court will then also reiterate that the Court believes the law is that the uncorroborated testimony of a petitioner is insufficient to go forward. That is all the testimony on many of the issues that the Court heard from the defendant. Those issues should be struck summarily . . . .

Based upon this statement, we have examined the record to ascertain whether the petition was dismissed solely because the petitioner's testimony was uncorroborated.

The comments of the post-conviction court are understandable in light of the language used in various opinions of this court. This language appears to have its genesis in Morgan v. State, 445 S.W.2d 477 (Tenn. Crim. App. 1969), one of the first post-conviction cases decided by this court after the adoption of the Post-Conviction Procedure Act of 1967. In Morgan, we stated "[the petitioners'] uncorroborated testimony does not sustain the burden of proof resting upon them, or justify granting the writ of habeas corpus, where the judgment is regular upon its face and entitled to the presumption of validity." *Id.* at 480. The court cited cases that were all decided prior to the adoption of the Post-Conviction Procedure Act of 1967 and involved only habeas corpus relief. Shortly after Morgan, we stated in Swaw v. State, 457 S.W.2d 875, 876 (Tenn. Crim. App. 1970), that "[the post-conviction relief petitioner's] uncorroborated testimony is insufficient to carry [the burden of proof], where the judgment is regular on its face and entitled to the presumption of validity."

In Sherrill v. State, 772 S.W.2d 60, 62 (Tenn. Crim. App. 1989), this court specifically rejected the state's reliance on Morgan for the proposition that the uncorroborated testimony of a post-conviction relief petitioner is insufficient *per se* to sustain his burden of proof. We noted such a proposition would preclude the post-conviction court from finding counsel to be ineffective even if the post-conviction court were convinced of the veracity of the petitioner and the validity of his claim. *Id.* at 63. Further, it found such a holding would contradict the spirit of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), which was decided after Morgan, and "would work an injustice and generally serve as authority to defeat any petitioner who claims" trial counsel was not effective. Sherrill, 772 S.W.2d at 63.

Despite Sherill, our court has since routinely cited Morgan and/or Swaw in stating that a post-conviction relief petitioner's uncorroborated testimony is insufficient to carry the burden of proof where the judgment is regular on its face and entitled to the presumption of validity. *See, e.g.,* State v. Kerley, 820 S.W.2d 753, 757 (Tenn. Crim. App. 1991); Devito S. Polk v. State, No. 02C01-9602-CR-00065, 1997 Tenn. Crim. App. LEXIS 189, at **3-4 (Tenn. Crim. App. Feb. 28, 1997, at Jackson); Bart Chandler v. State, No. 02C01-9502-CC-00047, 1995 Tenn. Crim. App. LEXIS 702, at *4 (Tenn. Crim. App. Aug. 23, 1995, at Jackson); Donald R. West v. State, No. 03C01-9407-CR-00253, 1995 Tenn. Crim. App. LEXIS 359, at *7 (Tenn. Crim. App. Apr. 26, 1995, at Knoxville)

(petitioner's testimony standing alone carries little weight), *perm. to app. denied* (Tenn. 1995); William Dan Johnson v. State, No. 02C01-9212-CR-00263, 1994 Tenn. Crim. App. LEXIS 45, at *6 (Tenn. Crim. App. Feb. 2, 1994, at Jackson), *perm. to app. denied* (Tenn. 1994); David M. Ogle v. State, No. 03C01-9303-CR-00104, 1994 Tenn. Crim. App. LEXIS 4, at *3 (Tenn. Crim. App. Jan. 6, 1994, at Knoxville). However, we note that in none of these cases was the lack of corroboration fully determinative of the issues presented.

There is clearly one area of law which requires corroboration of a witness's testimony. The testimony of an accomplice-witness must be corroborated in order to support a conviction. *See* State v. Bane, 57 S.W.3d 411, 419 (Tenn. 2001). This requirement has long been entrenched in our criminal law. The clear and obvious reason for such a requirement regarding accomplices is to protect the accused's right to a fair trial and to guard him against untruthful testimony by a witness with suspect motivation. *See generally id. at* 420; Sherrill v. State, 321 S.W.2d 811, 814 (Tenn. 1959).

We do not believe that our court, through the use of the Morgan language, has intended to create a blanket rule, similar to the accomplice corroboration requirement, that a post-conviction petitioner's testimony *must* be corroborated by some other witness or evidence in order to be considered on its merits.

Our state's Post-Conviction Procedure Act is intended to be a vehicle for the good faith claims of defendants deprived of their constitutional rights. *See* State v. Menn, 668 S.W.2d 671, 673 (Tenn. Crim. App. 1984). As we noted in Sherrill, because of the inherently private and confidential nature of the attorney-client relationship, a corroboration requirement as applied to a claim of ineffective assistance of counsel would often be impossible for a petitioner to establish. 772 S.W.2d at 62. Such a requirement would preclude relief where only the petitioner and trial counsel were privy to the challenged conduct, even if the post-conviction court found the petitioner's testimony to be credible. Thus, we find the trial court's statement that the petitioner's uncorroborated testimony "should be struck summarily" to be in error.

However, after carefully reviewing the record and the trial court's findings in this case, it is evident that, despite the post-conviction court's statement, it did not summarily dismiss the petition or summarily disregard the petitioner's testimony. Instead, the lower court properly conducted a full hearing on the petition in which the state presented strong and detailed testimony by trial counsel to rebut the petitioner's testimony in all material respects. Our review shows the post-conviction court weighed all of the proof, including the testimony of the petitioner and of trial counsel, made extensive findings, accredited the testimony of trial counsel, implicitly rejected the credibility of petitioner's testimony, and made a proper ruling based upon all the evidence and the court's observations regarding the weight and credibility of the evidence. Therefore, while we find the post-conviction court's statement regarding the petitioner's uncorroborated testimony to be error, we conclude this error did not affect the manner in which the post-conviction court conducted the hearing or made its findings.

Defendant's contention that he was deprived of the effective assistance of counsel is without merit.

## IV.  VOLUNTARY WAIVER OF RIGHT TO APPEAL

The petitioner also contends he did not voluntarily waive his right to appeal.  At the post-conviction hearing, he testified he was "stressed out to the max" at the time he entered into the sentencing agreement and did not understand he was waiving his right to an appeal.  He stated he recalled telling the trial court he understood his rights and knew what he was doing, but, in reality, he did not understand what he was doing.  He further testified he signed the order waiving his right to an appeal without reading it properly because he did not have his glasses.

A criminal defendant has the right to one level of appellate review.  Tenn. R. App. P. 3(b); Collins v. State, 670 S.W.2d 219, 221 (Tenn. 1984).  A defendant's waiver of this right to appeal must be made voluntarily.  *See* Tenn. R. Crim. P. 37(d); Collins, 670 S.W.2d at 221.  Further, the waiver should be reduced to writing in a document signed by the defendant, subscribed to by counsel, and clearly reflecting the defendant's awareness of the right to appeal and voluntarily waiving it.  Tenn. R. Crim. P. 37(d).

In the instant case, the record shows that both trial counsel and the trial court advised the petitioner he would be waiving his right to an appeal under the terms of the agreement, and the petitioner indicated he understood and wished to accept the agreement.  Further, the proof established the petitioner signed a written order clearly stating he was waiving his right to an appeal.  The post-conviction court found the petitioner voluntarily waived his right to an appeal.  The evidence does not preponderate against this finding.  This issue is without merit.

## CONCLUSION

In summary, we conclude the post-conviction court did not err in denying the petitioner's request for post-conviction relief.  We affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE